IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

KENNETH BLACK,                          )
                                        )
              Plaintiff,                )
                                        )
v.                                      )    Case No. CIV-19-101-KEW
                                        )
DYLAN SIMMONS, JAMES HAMLIN,            )
DILLON SWAIM, BRYAN WILKINS,            )
and JARAD FORBES,                       )
                                        )
              Defendants.               )

## OPINION AND ORDER

This matter comes before the Court on Defendants Dylan
Simmons, James Hamlin, Dillon Swaim, Bryan Wilkins, and Jarad
Forbes' Motion for Summary Judgment and Brief in Support (Docket
Entry #39). Upon review and consideration of the filings of the
parties, this Court renders the following ruling.

On April 2, 2017, at about 2:20 a.m., the Muskogee Police
Department received a complaint about loud music being played in
the area of 1000 Lowrey Street. The caller thought the music was
coming from the nearby residence of Plaintiff Kenneth Black.
Officer Galin Shultz was assigned the call, and Officer Hamlin was
assigned as the backing officer. When Officers Hamlin and Shultz
arrived at Plaintiff's residence, they activated their body-worn
cameras. Officer Hamlin activated the overhead lights of his patrol
car and briefly turned on his siren to get the attention of
whomever was at Plaintiff's property playing loud music. When there

was no response, the dispatcher contacted Plaintiff by telephone. The music was turned down, and shortly thereafter, Officers Hamlin and Shultz heard a gunshot fired from the direction of Plaintiff's property. A gunshot is audible on the video footage from Officer Hamlin's body camera. After hearing the shot, Officer Hamlin advised the dispatcher over his hand-held radio that shots had been fired. Officers Hamlin and Shultz took cover behind a patrol car.

Approximately three minutes later, at 2:39 a.m., Plaintiff exited his residence. He walked into view near the east side of two large vehicles parked on his property. The video reveals that Officer Hamlin immediately commanded Plaintiff to "put your hands up," to "turn around and walk backwards," and to "stop right where you're at!" Plaintiff shined his flashlight toward the officers and began walking away from them. Officer Hamlin again told Plaintiff to "Stop!" and identified that he was with the police department. Defendants contend Plaintiff did not follow any of the commands, instead continuing to walk away, in and out of sight. Plaintiff disputes that he did not follow commands.

Additional officers arrived at Plaintiff's residence by 2:42 a.m., including Officers Simmons, Forbes, Swaim, and Wilkins. Officer Forbes, field supervisor for the graveyard shift, took cover behind a patrol car, and as captured by video from his body camera, he asked the dispatcher to "start county," meaning start

2

more officers from the County Sheriff's Department. He also asked if anyone had a long gun as he was concerned about an active shooter situation. Per affidavits from both officers, undisputed by Plaintiff, between the two of them, Officers Hamlin and Forbes had been to Plaintiff's property on several occasions in the past, Plaintiff had been argumentative and hostile to police, and he was known to have possessed firearms and threatened police.

Plaintiff continued to appear in and out of sight, and the officers on the scene continued to tell him to "show me your hands" and "put your hands up!" Officer Hamlin could see Plaintiff had something in his hands, but he could not immediately tell what it was. Video from both Officer Hamlin and Forbes shows the officers continued telling Plaintiff to drop what was in his hands and to let them see his hands. The officers determined Plaintiff had a flashlight in one hand and what looked like a shiny cane in his other hand.

In order to secure Plaintiff so the officers could investigate whether someone shot at the police or if someone on the property had been shot, Officer Forbes decided to utilize a contact team of officers to approach Plaintiff and take him into custody. The contact team included Officers Forbes, Simmons, Swaim, and Hamlin. The contact team began moving toward Plaintiff. Plaintiff shined his light at the officers, briefly obscuring their view of him and resulting in Officer Forbes stopping the contact team's advance.

3

On the video of Forbes, he again advised Plaintiff to drop whatever was in his hands. Plaintiff told the officers to "Stop the hollering!" After several additional commands to drop whatever was in his hands, Plaintiff put the flashlight on the ground. When told to drop his cane, he responded that he could not drop his cane. Officers are heard repeatedly telling Plaintiff to "keep your hands up," and Plaintiff can be heard telling the officers, that "I ain't got a weapon," followed by "Knock it off!" and repeating, "Knock it the fuck off!"

Officer Forbes confirmed with Officer Simmons that he had his "less lethal" taser device. The contact team again moved toward Plaintiff. When within range, Officer Forbes directed Officer Simmons to deploy his taser. Officer Simmons deployed his taser, but it was not completely effective on Plaintiff, as he remained standing. Video from Forbes reveals he immediately alerted Plaintiff to the taser and told him repeatedly to "get down on the ground now." When Plaintiff did not comply, Officer Forbes tackled Plaintiff around his shoulders and brought him to the ground. Officer Forbes tackled Plaintiff because he perceived him as a potential threat based upon the shot fired, his continual non-compliance with commands, his prior history of possessing firearms, and because Plaintiff had not yet been patted down for weapons.

4

Once Plaintiff was on the ground, video shows that the officers struggled to handcuff Plaintiff. Officer Forbes was on Plaintiff's back, Officer Hamlin was on his lower legs, Officers Simmons and Swaim were near Plaintiff's head and shoulders, and Officer Wilkins was on his way from the street to assist taking Plaintiff into custody. During this time, Officer Forbes contends he attempted to handcuff Plaintiff by reaching under Plaintiff to pull out one of his arms. When he did so, Plaintiff grabbed Officer Forbes' arm and hand and started pulling. Officer Forbes then struck Plaintiff in the head with the heel of his hand several times.

Officer Simmons can then be heard twice, stating, "Don't fucking bite me," and another time saying, "Don't bite me." It is undisputed that Officer Simmons used a closed fist to strike the side of Plaintiff's face several times. Immediately after Officer Simmons is heard yelling at Plaintiff to stop biting him, Officer Wilkins, who was located near the area of Plaintiff's head, began hitting Plaintiff in the face with his flashlight with several quick strikes to get Plaintiff to stop biting Officer Simmons.

Still unsuccessful in handcuffing Plaintiff, Officer Forbes used his taser on Plaintiff and utilized a technique called "stapling." He deployed his taser into Plaintiff's back, then immediately "drive stunned" him on his left thigh to obtain neuromuscular incapacitation. The "stapling" technique allowed for

Officer Swaim to handcuff Plaintiff's wrists. Plaintiff does not contend that any additional force was used against him once he was handcuffed.

After Plaintiff was in custody, he was searched, and other than a pocket knife, no weapons were found. Emergency Management Services were called because of bleeding from Plaintiff's face, and Plaintiff was later transported to the hospital.

Following the incident, Plaintiff was charged with felony Assault and Battery on a Police Officer for biting Defendant Simmons, and with misdemeanor Obstruction of a Police Officer. After a preliminary hearing on June 27, 2017, Plaintiff was bound over on both charges. On February 26, 2019, Plaintiff pleaded "no contest" to the assault and battery charge and the obstruction charge was dismissed. He received a one-year deferred sentence for the assault and battery charge.

Plaintiff initiated this action on March 28, 2019, alleging the Defendants violated his constitutional rights under the Fourth Amendment as enforced through 42 U.S.C. § 1983 by conducting an unreasonable seizure without probable cause, warrant, or exigent circumstance and by employing an unreasonable use of force. Defendants filed the subject Motion asserting (1) Plaintiff is estopped from litigating his claim for unlawful seizure/false arrest, or in the alternative, Defendants are entitled to qualified immunity for any unlawful seizure; and (2) Defendants are entitled

6

to qualified immunity for Plaintiff's excessive force claim because no violation of the Fourth Amendment occurred and the Defendants did not violate any clearly established law.

Contemporaneous with the filing of Plaintiff's response to Defendants' Motion, the parties filed a Joint Stipulation of Partial Dismissal of Certain Claims with Prejudice Against Defendants. *See* <u>Docket Entry #45</u>. Therein, the parties stipulated to the dismissal of Plaintiff's Fourth Amendment claim that Defendants violated his constitutional rights by arresting him without a warrant, probable cause, or exigent circumstance. This claim is deemed dismissed with prejudice based upon the joint stipulation of the parties. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii). However, Plaintiff's Fourth Amendment claim that Defendants violated his constitutional right to be free from excessive force while seizing him remains. *Id*.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Universal Money Centers v. A.T. & T.*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied*, 513 U.S. 1052 (1994). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Applied Genetics v. First Affiliated Securities*, *Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir. 1983).

Defendants assert qualified immunity and, in doing so, first assert that no violation of the Fourth Amendment occurred. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity," *Cillo v. City of Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013), which "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law," *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008)(quotations omitted). Generally, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that

the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460. If a plaintiff fails to make either showing, then a court must recognize the defendant's qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

Plaintiffs must also "do more than show that their rights 'were violated' or that 'defendants,' as a collective and undifferentiated whole, were responsible for those violations. They must identify specific actions taken by particular defendants . . . that violated their clearly established rights." *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (internal citations omitted). "[T]he complaint must 'isolate the allegedly unconstitutional acts of each defendant'; otherwise the complaint does not 'provide adequate notice as to the nature of the claims against each' and fails for this reason." *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018), quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Defendants assert Plaintiff has failed to "distinguish which conduct is attributable to which Defendant" in the Complaint. They argue Plaintiff's reference conduct by Defendants as a "collective whole" which "does not suffice to show personal involvement by any individual defendant and cannot overcome Defendants' qualified immunity." <u>Defendants' Reply</u>, p. 6 (Docket Entry #50). However, while the facts as alleged by Plaintiff in the Complaint refer to

9

Defendants as a "collective whole," the undisputed facts establish the force alleged to be excessive and the defendant officer who engaged in such conduct. Specifically, the undisputed facts establish that: 1) Defendant Simmons deployed his taser on Plaintiff; 2) Defendant Forbes tackled Plaintiff; 3) Defendant Forbes struck Plaintiff in the face and head with his hand; 4) Defendant Simmons struck Plaintiff in the face and head with his fist; 5) Defendant Wilkins struck Plaintiff in the face with a flashlight; and 6) Defendant Forbes used his taser in a "stapling" technique on Plaintiff to handcuff him. Plaintiff identifies all of these actions as applications of excessive force in his briefing.[1]

The Fourth Amendment to the Constitution precludes an illegal "seizure" of a citizen through the use of excessive force. U.S.C.A. Const. Amend. IV. The question to be answered in a qualified immunity context on excessive force claims is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their

---

[1]     Plaintiff asserts there are six instances in this case when Defendants' use of force was in violation of his rights under the Fourth Amendment:  "1) [t]he initial use of the taser on Plaintiff, 2) tackling the Plaintiff, 3) punching the Plaintiff in the head and face in order to secure his hands, 4) punching the Plaintiff in the head and face in response to Plaintiff 'biting' Defendant Simmons' forearm, 5) striking the Plaintiff in the face and head with a metal flashlight in response to Plaintiff 'biting' Defendant Simmons' forearm, [and 6]) the use of the taser on Plaintiff's back and thigh after he was face down with Defendants controlling both hands." Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 7 (Docket Entry #46).

underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396. The Fourth Amendment "do[es] not require [officers] to use the least intrusive means in the course of a detention, only reasonable ones." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994). "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed." *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir. 2004), quoting *Saucier v. Katz*, 533 U.S.194, 205 (2001); *see also Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) ("A reasonable officer need not await the 'glint of steel' before taking a self-protective action; by then, it is often . . . too late to take safety precautions.'").

The evaluation of "reasonableness" is based on the totality of the circumstances, "requir[ing] careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. Under this approach, the court is required to consider a balance of the factors of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

Applying the first *Graham* factor to this case, the officers initially went to Plaintiff's property on a loud music complaint,[2] which is a minor offense. However, once Officers Hamlin and Schultz arrived at Plaintiff's residence, the situation they faced changed from a minor noise complaint to a slightly more serious situation when the officers heard a gunshot coming from the direction of Plaintiff's property. Officer Forbes testified Plaintiff was under investigation regarding the discharging of a firearm, and his non-compliance with commands resulted in his obstructing that investigation. Obstruction of justice is a misdemeanor. *See Lee v. Tucker*, 904 F.3d 1145, 1149 (10th Cir. 2018) ("[W]e have held that the first *Graham* factor may weigh against the use of significant force if the crime at issue is a misdemeanor."). Thus, the Court finds the first *Graham* factor weighs slightly in Plaintiff's favor.

The second and third *Graham* factors overlap in this case and will be addressed together. Whether Plaintiff posed an immediate threat to the safety of the officers or others "is undoubtedly the most important and fact intensive factor in the objective

---

[2]     Plaintiff denies there was "loud" music coming from his property. He claims to have been sleeping when called, and he told the caller he would have to get dressed and would exit his house with a flashlight and a walking cane in a few minutes. He asserts no loud music can be heard on any of the video footage from the officers' body cameras. Although Officer Hamlin admitted in his deposition testimony that the music is not audible on the video, and he agreed it was not loud enough to be picked up by the camera's microphone, he did not admit there was no loud music. In any event, the Court concludes this issue is irrelevant because it weighs this factor in Plaintiff's favor.

reasonableness of an officer's use of force." *Pauly v. White*, 874 F.3d 1197, 1215-16 (10th Cir. 2017) (internal citations and quotations omitted). A court considers facts and circumstances at the moment force is used as well as the events leading up to the moment. *See Jiron*, 392 F.3d at 415. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

Here, regardless of the reason for the initial contact with Plaintiff, Officers Hamlin and Schultz arrived at Plaintiff's residence late at night and heard a gunshot from the direction of Plaintiff's property.[3] Officer Forbes and the other officers arrived at Plaintiff's residence. Officers Forbes and Hamlin were familiar with Plaintiff and were aware of instances when Plaintiff was argumentative and hostile to police and that Plaintiff had possessed firearms. For example, Officer Hamlin participated when

---

[3]      It is disputed by Plaintiff that he fired the gunshot; however, a gunshot is audible on the video from the body cameras of Officers Hamlin and Shultz. Officer Hamlin believed the gunshot originated from the direction of Plaintiff's property. In evaluating whether force was "objectively reasonable," the Court considers the perspective of a reasonable officer, not that of the suspect. *See Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene[.]"). Under the circumstances, the Court finds it was reasonable for the officers to believe the gunshot came from Plaintiff's property.

the Muskogee Special Operations team responded to Plaintiff's property, and Plaintiff had barricaded himself, had a gun, and threatened to shoot an officer. Officer Forbes was aware of the incident. Additionally, Officer Forbes had been a backer on a traffic stop when Plaintiff refused to get out of his car following an order from an officer. He also was concerned there could be an active shooter situation, or there could be someone on the property who had been shot. Moreover, Officer Forbes viewed Plaintiff's property as unique because it was the only house for some distance. There was nothing north or west of it for several hundred yards and to the south there was a wooded area. Officer Forbes believed he and his officers were in a bad position tactically because the street was lit up and they only had police vehicles to take cover behind. Plaintiff's property was dark, giving Plaintiff plenty of places to hide or take cover.

Plaintiff does not dispute his past interactions with the police, the officers' knowledge of it, or Officer Forbes' depiction of his property. Such information could cause a reasonable officer to approach the situation with heightened caution. *See Tanner v. San Juan County Sheriff's Office*, 864 F.Supp.2d 1090, 1135 (D. N.M. 2012) ("Courts generally give officers more leniency in the excessive force context when they have specific information available to them indicating that a suspect has engaged in violent

14

behavior in the past.").[4]

Taking the alleged applications of force in the order they occurred, the Court addresses the second and third *Graham* factors. Plaintiff first contends that Officer Simmons' use of his taser on Plaintiff constituted excessive force. The undisputed facts show that Officer Forbes instructed Officer Simmons to deploy his "less lethal" taser on Plaintiff only after Plaintiff failed to comply with numerous officer commands. Although Plaintiff maintains he complied with commands and was not resisting arrest, his actions on the videos from the officer body cameras show otherwise.[5] Based on the gunshot, the uncertainty surrounding the situation, Officer

---

[4]     Plaintiff asserts that after he was arrested, no gun was ever located. This is of no consequence to the excessive force analysis, however, as again, the Court considers the perspective of a reasonable officer, and it was reasonable for the officers to believe Plaintiff could have a gun based on the gunshot and their prior knowledge that Plaintiff had a history of hostile interactions with law enforcement and possession of firearms.

[5]     Plaintiff offers several reasons for his noncompliance. For example, he asserts that when he initially exited his house, he immediately focused on securing his dogs for their protection and the protection of the officers. Although he could hear the officers shouting, he was not sure who they were shouting at or what they wanted. He also contends he shined his flashlight toward the officers so they would know he did not have a weapon. Plaintiff further maintains that he refused to drop his cane because he used it for mobility and balance and was afraid of falling. He also was afraid his dog would approach officers, and he needed his cane for support so he could use his free hand to grab his dog's collar. However, Plaintiff's explanations for his failure to comply with officer commands are irrelevant to the Court's analysis because Plaintiff's intentions were not known to the officers. From an officers' perspective, all they observed was Plaintiff's failure to comply with their commands. *See Reeves v. Churchich*, 484 F.3d 1244, 1253 (10th Cir. 2007) ("Thus, just as we objectively examine a police officer's conduct under the Fourth Amendment, the Reeves' subjective motives behind their failure to submit are irrelevant.").

Forbes' prior knowledge of Plaintiff's history with the police,
Plaintiff's failure to comply with numerous officer commands, and
the fact that Plaintiff had not been patted down, the Court finds
the second and third *Graham* factors weigh in favor of Defendants,
and Officer Simmons' use of his taser on Plaintiff was objectively
reasonable under the totality of the circumstances.

Plaintiff next contends that Officer Forbes used excessive
force when he tackled Plaintiff. However, the taser proved
ineffective on Plaintiff, and he continued to ignore additional
commands from Officer Forbes to get down on the ground. *See Fisher
v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009) (holding
the failure to comply with officer's lawful orders to get on the
ground can be seen as a "form of resisting arrest"). The
circumstances remained the same as before Officer Simmons deployed
his taser. Thus, the Court finds the second and third *Graham*
factors weigh in favor of Defendants, and Officer Forbes' tackling
of Plaintiff was objectively reasonable under the totality of the
circumstances.

Plaintiff also asserts Officer Forbes used excessive force
when he hit Plaintiff several times in the head and face with his
fist after he had tackled Plaintiff and he was on the ground.
Plaintiff contends he was not resisting arrest, but instead, his
hands were trapped under the weight of his body and the weight of
the officers. Although the video from Officer Shultz's body camera

16

suggests the arrangement of officers complicated the process of handcuffing Plaintiff - "We're on top of his arm, we can't get it." - the video also demonstrates that even though Plaintiff contends he was not resisting - "I'm not resisting" – he was resisting and was repeatedly told to "quit resisting." It is unclear from the video whether Plaintiff grabbed Forbes' hand or arm, but it is clear the officers still struggled to handcuff Plaintiff, and he was still resisting. Moreover, Plaintiff still was not completely restrained and had not been patted down for a weapon. *See McCoy v. Myers*, 887 F.3d 1034, 1048 (10th Cir. 2018) (distinguishing between pre-restraint and post-restraint force and finding that "[e]ven if Mr. McCoy was, as he maintains, lying face down with his hands behind his back and with several officers pinning him, . . . a reasonable officer could conclude that he was not subdued when the allegedly excessive force occurred."); *see also Weigel v. Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008) (holding that defendant officer's alleged use of force became excessive "once Mr. Weigel was handcuffed and his legs were bound"); *Lynch v. Board of County Comm'rs of Muskogee County, Okla.*, 786 F. App'x 774, 782 (10th Cir. 2019) ("First, the officers successfully shackled Cody's hands and legs while he was laying on his stomach. Second, after Cody's legs were shackled, Apple stood on the chain connecting Cody's ankles. Cody was subdued at that point[.]").

Based on the totality of the circumstances, the force Officer Forbes used against Plaintiff was objectively reasonable.

Plaintiff maintains that Officer Simmons used excessive force when he hit Plaintiff in the head and face with his fist after Plaintiff allegedly bit his left forearm. Plaintiff asserts he did not bite Officer Simmons and that Officer Simmons started yelling at Plaintiff to justify punching Plaintiff in the face. Defendant argues that Plaintiff is precluded from claiming he did not bite Officer Simmons because he was bound over at a preliminary hearing for Assault and Battery on a Police Officer, directly related to the biting incident with Officer Simmons, and he was convicted.

Plaintiff entered a plea of "no contest" to the charge and received a deferred sentence. The Tenth Circuit has stated that "[t]here is a proscription on the use of nolo contendere pleas in subsequent civil proceedings, but it applies only to 'offensive' use . . . to establish the criminal defendant's subsequent potential civil liability, not to . . . 'defensive' use . . . in a case where the criminal defendant [has] sought to recover damages for an alleged unlawful arrest." *Jackson v. Loftis*, 189 F. App'x 775, 779 (10th Cir. 2006) (internal citations and quotations omitted). However, "a plea of nolo contendere has the same *legal* effect as a guilty plea, [but] it is not a *factual* admission to the underlying crime." *Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216 (10th Cir. 2000) (emphasis in original), citing *Olsen v.*

18

*Correiro*, 189 F.3d 52, 59 (1st Cir. 1999). Thus, Plaintiff's plea of "no contest" to assault and battery is not a factual admission and does not preclude him from asserting that an officer's force was excessive when compared to the threat that was imposed on the officer.

In any event, Plaintiff's contention that Officer Simmons began shouting "don't bite me" to justify punching Plaintiff in the face is nothing more than conjecture and speculation. *McCoy*, 887 F.3d at 1039 ("But for 'dispositive issues on which [Mr. McCoy] will bear the burden of proof at trial,' the record must contain evidence that is 'based on more than mere speculation, conjecture, or surmise.'"), quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (quotations omitted). It is clear from the officer body camera videos that Officer Simmons believed Plaintiff was biting him. Based on the totality of the circumstances, including that Plaintiff continued to resist arrest and the officers continued to struggle to handcuff Plaintiff, Officer Simmons' response was objectively reasonable.

Plaintiff further contends that Officer Wilkins used excessive force on Plaintiff when he struck Plaintiff several times in the head and face with a metal flashlight. Officer Wilkins contends he struck Plaintiff's face with several quick strikes of his flashlight because he was biting Officer Simmons. Plaintiff contends that on the videos, Officer Forbes can be heard saying,

"Ease up – ease up with the flashlight." Plaintiff asserts Officer Forbes' statement was made because he knew hitting Plaintiff in the face with a flashlight was excessive.

The reasonableness of Officer Wilkins' use of force against Plaintiff may not be judged "with the 20/20 vision of hindsight[,]" but instead must be judged "from the perspective of a reasonable officer on the scene[.]" *Graham*, 490 U.S. at 396. The Court must take into account the immediate threat at the time the force was used, but must also allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Here, the officers' attempt to take Plaintiff into custody lasted less than two minutes from when Officer Simmons initially tased Plaintiff. Officer Wilkins was not part of the contact team and joined the other officers to assist later in the confrontation. Officer Wilkins heard Officer Simmons warning Plaintiff not to bite him. This Court will not "second-guess [the force used by Officer Wilkins] using the 20/20 hindsight found in the comfort of a judge's chambers." *Phillip v. James*, 422 F.3d 1075, 1084 (10th Cir. 2005). Based on Officer Simmons' proclamation, Plaintiff's resistance to being taken into custody, and the fact that Plaintiff remained unrestrained, Officer Wilkins made several quick strikes

on Plaintiff's face with his flashlight. The Court finds this was reasonable under the totality of the circumstances.

Lastly, Plaintiff asserts Officer Forbes used excessive force when he used his taser to perform a "stapling" technique on Plaintiff in order to handcuff him. Plaintiff asserts this was unnecessary because he was not resisting the officers, and they had control of both of his arms. The video shows that although Plaintiff's arms were not underneath him, the officers did not yet have both of Plaintiff's arms behind his back to handcuff him. Based on the totality of the circumstances, Officer Forbes acted reasonably in using the "stapling" technique to complete and successfully handcuff Plaintiff.

The second and third *Graham* factors weigh in favor of Defendants. The Court finds that under the totality of the circumstances, the actions of Officers Simmons, Hamlin, Swaim, Wilkins, and Forbes were objectively reasonable. Thus, Plaintiff has failed to show the force used by the officers violated his federal constitutional rights, and the officers are entitled to qualified immunity.[6]

---

[6] The Court would note that none of the applications of force alleged to be excessive by Plaintiff specifically involve actions by Officers Hamlin or Swaim. Both officers were part of the contact team, but the only force applied by Officer Hamlin was holding onto Plaintiff's legs once he was on the ground. The only force applied by Officer Swaim was that he pulled out Plaintiff's left arm and applied handcuffs to his wrists. Plaintiff does not contend that either of these actions constituted excessive force. Moreover, he does not allege liability on

Even though the officers' actions were objectively reasonable, Plaintiff must also satisfy the second prong of qualified immunity that the officers' actions violated a clearly established constitutional right. The law must have been clearly established at the time of the incident. In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that he or she violated that right. *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007). "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" *Lobozzo v. Colo. Dept. of Corr.*, 429 F. App'x 707, 710 (10th Cir. 2011). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001); *see also Medina*, 960 F.2d at 1498. On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." *Anderson v.*

---

the basis of failure to intervene. Thus, Officers Hamlin and Swaim are entitled to qualified immunity on this basis as well.

*Creighton*, 483 U.S. 635, 640 (1987). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

Plaintiff relies on two cases to show clearly established law, *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) and *Cavanaugh v. Wood Cross City*, 625 F.3d 661 (10th Cir. 2010). In *Casey*, the plaintiff was tackled, tasered, and beat with no warning after he left the courthouse with a court file, which was a misdemeanor, to obtain money from his truck. The plaintiff was stopped by officers as he tried to reenter the courthouse, and without explaining anything to him, the officers tackled him to the ground, tasered and handcuffed him, and then beat his head into the ground. 887 F.3d at 1279-80. Although the court determined the officers used excessive force, the decision turned on the minor crime, that the plaintiff did not pose an immediate threat to anyone's safety, and he was not violent and

23

did not try to flee. *Id*. at 1282. However, in this matter, the officers were on heightened alert because of the gunshot and based on their prior dealings with Plaintiff. Moreover, when given specific commands by officers, Plaintiff failed to follow them. *Casey* does not clearly establish to Defendants that their conduct would violate the law.

Moreover, Plaintiff's reliance on *Cavanaugh* is misplaced. In *Cavanaugh*, prior to approaching the suspect woman, police were called by her husband who indicated she had stormed off after a fight, had been drinking, had taken medication, attempted to put him in a closet, and left with a kitchen knife. When an officer arrived at the residence, he found the woman outside the house. Her hands were empty, but the officer tased the woman in the back without any warning. 625 F.3d at 662-63. The court determined the law was clearly established that an officer could not use a taser "against a non-violent misdemeanant who appeared to pose no threat and who was given no warning or chance to comply with the officer's demands." *Id*. at 667. Again, the factors in *Cavanaugh* are different from this case. Here, Plaintiff was given several opportunities to submit to the officers' commands, and he failed to comply. Also, Plaintiff had objects in his hands and was told several times to drop the objects. *Casey* does not clearly establish to Defendants that their conduct would violate the law.

The Court therefore finds Plaintiff has failed to establish either prong of the qualified immunity test. He has failed to establish a violation of his constitutional rights by any of the officers, and the law is not clearly established that the officers' actions violated the existing law. Accordingly, Defendants Simmons, Hamlin, Swaim, Wilkins, and Forbes are entitled to qualified immunity on Plaintiff's claims of excessive force.

IT IS THEREFORE ORDERED that Defendants Dylan Simmons, James Hamlin, Dillion Swaim, Bryan Wilkins, and Jarad Forbes' Motion for Summary Judgment and Brief in Support (Docket Entry #39) is hereby **GRANTED**. Judgment will be entered for Defendants accordingly.

IT IS SO ORDERED this 30th day of September, 2020.


Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma